UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00127-RJC

| LERONE D. ROZZELLE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | ORDER |
| NANCY A. BERRYHILL,[1] | ) |  |
| Acting Commissioner of | ) |  |
| Social Security Administration, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**THIS MATTER** comes before the Court on Lerone D. Rozzelle's ("Plaintiff's") Motion for Summary Judgment, (Doc. No. 11), and Memorandum in Support, (Doc. No. 12), Nancy A. Berryhill's ("Defendant's or Commissioner's") Motion for Summary Judgment, (Doc. No. 13), and Memorandum in Support, (Doc. No. 14).

I. BACKGROUND

A. Procedural Background

Plaintiff seeks judicial review of Defendant's denial of his social security claim. (Doc. No. 1). On October 7, 2013, Plaintiff filed his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 405 et

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

seq. (Doc. Nos. 10 to 10-1: Administrative Record ("Tr.") at 249–51). Plaintiff's application was denied initially and upon consideration. (Tr. 22, 142-145, 173-176).

On October 8, 2015, a hearing was held in front an Administrative Law Judge ("ALJ"). (Tr. 40-77). On November 17, 2015, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 19–39). The Appeals Council denied review of the ALJ's decision on January 12, 2017, making the ALJ's opinion the final decision of Defendant. (Tr. 1–6). Plaintiff now appeals the ALJ's decision, requesting this Court to issue a remand pursuant to 42 U.S.C. §405(g).

B. Factual Background

The question before the ALJ was whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. (Tr. 22). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ ultimately concluded that Plaintiff was not under a disability at any point in the relevant timeframe. (Tr. 33–34).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i–v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. at 33–34).

To begin with, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since October 7, 2013, Plaintiff's application date. (Tr. 24). At the second step, the ALJ found that Plaintiff had the following severe impairments: "learning disability; hypertension; osteoarthritis; and history of cervical fracture." (Id.). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1." (Tr. 25).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform:

> sedentary work as defined in 20 CFR 416.967(a) except he can never climb ladders, ropes, or scaffolds, frequently climb ramps and stairs; frequently stoop, occasionally crouch, occasionally kneel, and occasionally crawl. He can engage in occasional interaction with the public and frequent interaction with co-workers. He is limited to jobs with no exposure to unprotected heights or dangerous moving machinery. He is limited to performing simple, routine, repetitive tasks that are not at a production rate pace, and that involve only occasional reading and no writing.

(Tr. 28). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as

consistent with the objective medical evidence and other evidence." (Id.). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 32). Finally, at the fifth and final step, the ALJ concluded that, after "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 33). Therefore, the ALJ determined that Plaintiff was not disabled. (Tr. 34).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that

"substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

Plaintiff asserts that the ALJ's decision contains two broad errors. Plaintiff argues that the ALJ failed to: (1) give a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments; and (2) obtain an explanation for apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles. (Doc. No. 12 at 5).

A. The ALJ Properly Analyzed Plaintiff's Mental RFC.

Plaintiff first claims that the ALJ failed to explain Plaintiff's ability to stay on task in light of his moderate limitation in concentration, persistence or pace ("CPP"). (Doc. No. 12 at 7). This failure, Plaintiff argues, violates the rule set out in Mascio v. Colvin, where the Fourth Circuit found that "the ability to perform simple tasks differs from the ability to stay on task." 780 F.3d 632, 638 (4th Cir. 2015). Only the ability to stay on task would account for a moderate limitation in CPP. Id.

Plaintiff's argument is not persuasive. Plaintiff focuses solely on the RFC's limitation of simple, routine, repetitive tasks and completely ignores the limitation of "not at a production rate pace." (Tr. 28). This latter limitation addresses Plaintiff's ability to stay on task, even in light of his moderate limitation in CPP. See Sizemore v. Berryhill, 878 F.3d 72 (4th Cir. 2017); Jarek v. Colvin, No. 3:14CV620-FDW-DSC, 2015 WL 10097516, at *5 (W.D.N.C. Sept. 4, 2015), report and recommendation adopted, No. 314CV00620FDWDSC, 2016 WL 626566 (W.D.N.C. Feb. 16, 2016), aff'd, 672 F. App'x 332 (4th Cir. 2017); Michaels v. Colvin, No. 3:15CV388-RJC-DSC, 2016 WL 8710975, at *7 (W.D.N.C. Mar. 25, 2016), report and recommendation adopted, No. 315CV00388RJCDSC, 2016 WL 5478014 (W.D.N.C. Sept. 26, 2016), aff'd sub nom. Michaels v. Berryhill, 697 F. App'x 223 (4th Cir. 2017) ("Consistent with Mascio, the ALJ limited the RFC not only to simple routine repetitive tasks but also to "work in a nonproduction pace rates....").

Next, Plaintiff argues that the ALJ failed to fully account for Plaintiff's moderate limitation in social functioning in the RFC analysis. (Doc. No. 12 at 9). In

Plaintiff's RFC, the ALJ limited Plaintiff to engaging in "in occasional interaction with the public and frequent interaction with co-workers." (Tr. 28). Plaintiff states that the ALJ should have made a determination as to how Plaintiff would accept instructions and criticism from supervisors. (Doc. No. 12 at 10).

The Court finds no gap in the ALJ's reasoning where no question ever existed regarding Plaintiff's interaction with supervisors or his respect with authority figures. In fact, the ALJ stated that his ultimate RFC finding "takes into account the mental difficulties alleged by the claimant." (Tr. 31). In his function report, Plaintiff was asked if he gets along with authority figures. (Tr. 381). Plaintiff answered, "Alright I guess." (Id.). Plaintiff also stated in his report that he was never fired due to problems getting along with other people. (Id.). At his hearing, Plaintiff repeated this fact when he stated that he was fired from his previous job not because he failed to work well with others, but because he was consistently late. (Tr. 59–60). The ALJ found no evidence in the record that Plaintiff would have any social function problems with supervisors. In his Step Three analysis, when the ALJ concluded that Plaintiff had a moderate limitation in social functioning, the ALJ found that:

> [i]n social functioning, the claimant has no more than moderate difficulties. The education records documented behavioral difficulties in the classroom when the claimant was quite young, but this improved over the course of a few years. During the period at issue, the claimant reported engaging in social activity, but not all the time. He denied needing reminders to go out or someone to accompany him, and denied difficulty getting along with others. He denied being fired or laid off due to problems getting along with others. The evidence does not support marked limitations in this area.

(Tr. 27) (citations omitted). Unlike in Mascio, there is no conflicting evidence in the record to trouble the Court about a missing limitation in Plaintiff's interaction with supervisors. Mascio, 780 F.3d at 637.

B. There Exist No Apparent Conflicts between the DOT and the VE's Testimony.

Plaintiff also argues that the ALJ erred by failing to identify and reconcile apparent conflicts between the Dictionary of Occupational Titles ("DOT") and the Vocational Expert's ("VE") testimony. (Doc. No. 12 at 11).

In Pearson v. Colvin, the Fourth Circuit clarified that the ALJ has two duties when it comes to assessing VE testimony:

> First, the ALJ must '[a]sk the [vocational expert] ... if the evidence he or she has provided conflicts with information provided in the [Dictionary]'; and second, '[i]f the [vocational expert]'s ... evidence appears to conflict with the [Dictionary ],' the ALJ must "obtain a reasonable explanation for the apparent conflict.' Notably, this second requirement is so independent of the first that it does not rest on the vocational expert's identification of a conflict.

810 F.3d 204, 208 (4th Cir. 2015) (quoting SSR 00–4p). The Fourth Circuit has interpreted this second duty to include an independent investigation by the ALJ of any apparent conflicts. Id. at 209. This "apparent" conflict standard requires the ALJ to identify where the VE's "testimony seems to, but does not necessarily, conflict with the [DOT]." Id.

To begin with, Plaintiff argues that the VE's testimony conflicts not only with the DOT, but with O*Net (Occupational Information Network) as well. Plaintiff cites no authority to support the proposition that the ALJ must discuss apparent conflicts between the VE testimony and O*Net. In fact, it is the view of some courts that no

such duty exists. Spurlock v. Berryhill, No. 1:17CV411, 2018 U.S. Dist. LEXIS 20777, at *21–22 (M.D.N.C. Feb. 8, 2018) (citing Malfer v. Colvin, Civ. No. 12-169J, 2013 U.S. Dist. LEXIS 136296, 2013 WL 5375775, at *5 (W.D. Pa. Sept. 24, 2013) (unpublished); Ryan v. Astrue, 650 F. Supp. 2d 207, 218 (N.D.N.Y. 2009; Willis v. Astrue, Civ. No. C08-1198-RSM, 2009 U.S. Dist. LEXIS 134941, 2009 WL 1120027 at *3 (W.D. Wash. Apr. 24, 2009) (unpublished)). SSR 00-4p only requires the ALJ to identify and resolve apparent conflicts between the VE's testimony and the DOT, not other administrative materials. (Id.) (citing Walker v. Berryhill, No. CV 16-01040-KES, 2017 U.S. Dist. LEXIS 42524, 2017 WL 1097171, at *3 (C.D. Cal. Mar. 23, 2017) (unpublished); SSR 00-4p, at *4-5, 2000 WL 1898704, at *2). In the absence of Plaintiff supporting his argument, Court does not believe that the ALJ has an affirmative duty to seek out and resolve apparent conflicts between the VE's testimony and O*Net when the VE did not rely on O*Net for their conclusions. See Nguyen v. Colvin, No. SACV 13-01338-DFM, 2014 WL 2207058, at *3 (C.D. Cal. May 28, 2014) (unpublished) ("[I]t is immaterial whether Plaintiff's RFC is compatible with the requirements of her past relevant work as determined by O*NET because the VE did not consult that source. Rather, the VE relied upon the DOT….").

Turning to the VE's testimony, it was suggested that, given Plaintiff's RFC, he could perform the jobs of dowel inspector, (DOT number 669.687-014); toy stuffer, (DOT number 731.685-014); and stem mounter, (DOT number 725.684-018). (Tr. 69-70). Plaintiff argues that each of these jobs conflict with the limitation of non-production pace. (Doc. No. 12 at 13–15). The Court disagrees.

To begin with, the Court has previously found the role of dowel inspector does not apparently conflict with non-production pace limitations. In <u>Martinez v. Berryhill</u>, the plaintiff argued that a conflict existed because the role of dowel inspector involved the production process of dowels. No. 3:17-CV-186, 2018 WL 709971, at *4 (W.D.N.C. Feb. 5, 2018). However, the Court did not find Plaintiff's argument persuasive. The conflict proposed by the plaintiff "implie[d] that being involved with the production of any good in any way implies a production rate or pace. Nothing in the DOT's description for dowel inspector … has anything to do with rate or pace, which is what the limitation in question was designed to restrict." <u>Id.</u>

The Court turns next to the jobs of toy stuffer and stem mounter. According to the DOT, a toy stuffer:

> [t]ends machine that blows filler into stuffed-toy shells: Inserts precut supporting wire into shell. Places shell opening over stuffing machine nozzle. Depresses pedal to blow cotton or chopped foam rubber filler into shell to impart shape to toy. Places stuffed toy in tote box. Records production. May stuff toys by hand.

STUFFER, DICOT 731.685-014. A stem mounter "[f]astens tungsten wire (filament) to glass stem to form mount for electric light bulb: Loops wire over hooks on glass stem held in revolving table and clinches hooks in place, using pliers. Cements ends to lead wires, using brush and carbon cement." STEM MOUNTER, DICOT 725.684-018. Like the Court found in <u>Martinez</u>, the jobs suggested for Plaintiff do not hint at what pace Plaintiff would be expected to work. Plaintiff would be involved in the production of products, but a conflict with the RFC would require a suggestion that Plaintiff would work as a fast pace, such as on an assembly line or conveyer belt. <u>See</u>

Martinez, 2018 WL 709971, at *4 (finding a "tenuous" conflict between an RFC limiting non-production pace and the job of a lens inserter, which the DOT stated required placing materials on a conveyer belt); Lorch v. Berryhill, No. 3:16-cv-00076-RJC, 2017 WL 1234203, at * (W.D.N.C. Mar. 31, 2017) (finding a conflict in the job of small-parts assembler when the DOT described the role as working "on assembly line to mass produce small products.").

Nor is the Court convinced by Plaintiff's argument that the proposed jobs conflict with the RFC's limitation to sedentary work. (Doc. No. 12 at 14). All three entries in the DOT clearly label the jobs of dowel inspector, toy stuffer, and stem mounter as "sedentary work." DOWEL INSPECTOR, DICOT 669.687-014; STEM MOUNTER, DICOT 725.684-018; STUFFER, DICOT 731.685-014.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;
2. Defendant's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED**; and
3. The Clerk of Court is directed to close this case.

Signed: March 7, 2018

Robert J. Conrad, Jr.
United States District Judge